131    275
s136   698

PEARL *v.* TOWNSHIP OF BENTON.

1. MUNICIPAL CORPORATIONS—IMPERFECT CONSTRUCTION OF BRIDGE—NOTICE—LIABILITY.

If a bridge, when constructed, is reasonably safe and fit for travel, a municipality is not liable for a defect in construction which only becomes a source of danger years afterwards through exceptional circumstances, unless it has notice of the dangerous condition.

2. SAME—EVIDENCE.

Evidence that the mudsills to a bridge, which was undermined by a flood, were left by the contractor some inches above the level of the bottom of the ditch which it spanned, is insufficient to show that the bridge, as constructed, was not reasonably safe and fit for travel, where it also appears that the mudsills were more than four feet from the edge of the drain, and that the bridge had stood for three years, during which time it had been subjected to severe and repeated tests.

3. SAME—DANGEROUS CONDITION—NOTICE—QUESTION FOR JURY.

Where, in an action against a township for injuries received from a falling bridge, there is some testimony tending to show that the imperfect condition of the bridge was visible and generally known for a long time, the question of notice should be submitted to the jury.

Error to Berrien; Coolidge, J. Submitted November 13, 1901. (Docket No. 103.) Decided June 27, 1902.

Case by Arthur L. Pearl against the township of Benton for personal injuries. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Reversed.

*Gore & Harvey* (*James O'Hara*, of counsel), for appellant.

*F. H. Ellsworth* and *G. M. Valentine* (*M. L. Howell*, of counsel), for appellee.

Hooker, C. J. The plaintiff was injured through the fall of a bent under the end of a bridge. This bridge was built by the township over a drain many years ago, and in the fall of 1892 it was rebuilt. The north posts rested upon the old mudsill, which was sound, and was not disturbed. The men who rebuilt it stated that the bed of the mudsill was below the bottom of the drain. The negligence complained of is that, in rebuilding the bridge, the contractor left the mudsill some inches above the bottom of the drain, and that it was afterwards undermined by water; and plaintiff claims that the bridge was never properly constructed in that respect, and that the township was chargeable with notice of the condition, because it was a defect in repairing or reconstruction.

The plaintiff relied upon the testimony of one Stone to prove that the bottom of the drain was below the mudsill. This witness said that he was employed to clean out this drain, and in doing so deepened it; that the bridge was rebuilt in the fall of 1892, just after he had cleaned and deepened the drain; that he worked to a profile; that the ditch was two feet on bottom and eight feet across top, slope one to one. On direct examination he said, "I should think I dug from 12 to 16 inches below the bottom of the mudsill." On cross-examination he admitted that he might have said on a former trial that it might have been four of five inches below the sill. He stated further on cross-examination:

" Q. I understand you to say now, when you had completed it, the bottom of the ditch was 12 to 16 inches below the bottom of the mudsill. Is that right?

"A. I said I dug the ditch 15 or 16 inches.

" Q. You dug it down 15 or 16 inches?

"A. Fifteen or 16 inches under the bridge.

" Q. Do you say that carried it below the bottom of the mudsill?

"A. It carried it below the bottom of the mudsills several inches; more than 4 or 5 inches.

" Q. About how many inches?

"*A.* I should think at the least calculation 10 inches, or somewhere along there.· I don't know as I did testify before it was 4 or 5 inches.

" *Q.* Explain how it was you said before it was not more than 4 or 5 inches. How much below the bottom of the mudsill was the bottom of the ditch when you were there a year ago?

"*A.* I could not say exactly. It was considerably lower. I went regardless of the old ditch at all. I went by the grade stakes, and dug down to the grade. Some places I would have to dig out more than ever was taken out before; you understand, out of the old ditch; got down below the bottom of the old ditch. Other places I wouldn't have so much to dig out; take out what was caved in and filled in; I say, in places. I think some sand washed in at the bridge; most always does. I have an idea, when I last saw it the ditch was some lower than the mudsill. I could not say exactly how much. I could not tell anywhere near. I don't suppose how deep it was. It was below the bottom of the mudsill more than 4 inches. I could not say how much more.

" *Q.* Six or 8 inches?

"*A.* I could not say whether it was or not.

" *Q.* Twelve or 15 inches?

"*A.* Might have been.

" *Q.* Might have been 12 or 15 inches?

"*A.* Might have been; might not have been so much.

\*    \*    \*

" *Q.* I will ask you this: How much below the mudsills —the bottom of the mudsills—did you actually dig?

"*A.* Below the bottom of the old mudsill 15 or 16 inches; somewhere in that neighborhood."

It was shown that, upon a former trial, he testified that he dug 12 or 15 inches, and, when through, it was 4 or 5 inches below the bottom of the mudsills. There was other testimony similar to that of Stone.

The undisputed testimony in the case shows that this bridge stood three years after rebuilding, that during that time it was subjected to severe and repeated tests, and that heavy threshing outfits crossed it without trouble. The description of the drain as given by Stone, and of the bridge as given by all, permit a conclusion as to the condi-

tion of the bridge, when rebuilt, with something like mathematical certainty.

It is shown by the diagram annexed, which is predicated on the testimony, that it was 16 inches below the bottom of the sill, and is therefore a favorable view of plaintiff's proof.

The law requires that highways be made reasonably safe and fit for travel. If once put in such condition, there can be no liability for a defect until the municipality can be said to be chargeable with notice of such defect. Not only does the diagram show that the center of the mudsill was five feet and more distant from the edge of the ditch at the bottom, and four feet and three inches from the ditch at the level of the bed of the sill, but it also shows that the whole bent was taken out and floated down the stream, at a time of exceptionally high water, when the stream overflowed its banks. We are of the opinion that the court did not err in holding that the evidence failed to show that this bridge was not, as constructed, reasonably safe and fit for travel. A township is bound to anticipate only the things that are reasonably probable, and it is not proper to hold the public to a stricter account than private persons. In the history of the country it has been no un-

common thing for floods to undermine and wreck bridges, the construction and cost of which must bear some reasonable and practicable relation to the ability of a community, which is restricted in some respects as to the money at command for such purposes. The public is not an insurer. It is apparent that this township endeavored to maintain a reasonable bridge, and did so until, from extraordinary conditions, it was weakened, and settled when plaintiff crossed it.

The rule for which counsel contend is a severe one. It is not that the liability is for a defect which is at once a source of danger, but one which may at some time in the future become so. It is not a construction that will necessarily become dangerous, but one which may or may not, depending on the nature of prospective events. All roads are subject to wear, and to washouts through the action of floods. It goes without saying that townships know this. Yet, until apprised of the defect caused by wear or washout, there is no liability. The legislature has said that the traveler must take the risk of danger of these things until the municipality not only has notice, but an opportunity for repair. When this bridge was rebuilt, it had every semblance of a good and stable structure. Moreover, by three years' use it was proved to have been so when erected. Not only the township, but every one else, plaintiff included, believed it to be so. It was only when, in the course of time, it became out of repair by the fortuitous undermining of its foundation, that it became defective and dangerous. It is too strict a rule to say that the township should have anticipated this possibility, as it would be to say that it should anticipate that nails will rust and break, beams become affected by dry and invisible decay, or iron girders and supports become crystallized and weakened. Everything is subject to these changes, and every one knows it. Either of two policies may be adopted: One to compel the township to know and protect against these dangers,—i. e., insure the traveler against them; the other to require diligence, as our

law does, but to limit liability to cases where knowledge or notice exists. The rule contended for nullifies the statute.

In the case of *Rochefort* v. *Inhabitants of Attleborough*, 154 Mass. 140 (27 N. E. 1013, 26 Am. St. Rep. 221), it was held that a town was not liable for an accident caused by a defect in a culvert so constructed that the defect was likely to occur in the remote future, where the defect had not existed for such a length of time as to make the town chargeable with notice thereof, and there had been no such defect at that place for more than a year previously. See, also, *Stoddard* v. *Inhabitants of Winchester*, 154 Mass. 149 (27 N. E. 1014, 26 Am. St. Rep. 223).

The case of *Wakeham* v. *Township of St. Clair*, 91 Mich. 27 (51 N. W. 696), is in point. There the township maintained a causeway, built of logs and covered with dirt, along a river. It was a common occurrence for the dirt to drop through, leaving holes, owing to the action of the water; and the township knew every time that it repaired the way, if it did not when it was constructed, that this would inevitably happen if that method of construction was adopted or retained. Held, that notice was necessary to create liability.

We think, however, that the judgment should be reversed upon the ground that the question of notice was for the jury, there being some testimony tending to show that the imperfect condition of the bridge was visible and generally known for a long period.

MOORE, GRANT, and MONTGOMERY, JJ., concurred. LONG, J., did not sit.