·PEARL *v.* TOWNSHIP OF BENTON.

| 136 | 697 |
|---|---|
| 137 | 57 |
| :136 | 697 |
| f143 | 3 88 |
| 136 | 697 |
| f149 | 3453 |
| 136 | 697 |
| 156 | 3 50 |

1. TOWNSHIPS — PERSONAL INJURIES — DEFECTIVE BRIDGES — AUTHORITY TO REPAIR.

A township which has elected to maintain its highways and bridges, not by a system of general taxation, as provided by 2 Comp. Laws, §§ 4104–4114, but by the labor of the inhabitants, as provided by sections 4072–4103, cannot escape liability for an injury due to a defective bridge on the ground that, as the accident happened after it had expended all its labor for the year, it had neither the means nor the authority to repair the bridge; adequate means and authority to repair bridges being given in such cases by 2 Comp. Laws, §§ 4129–4131, and 1 Comp. Laws, § 3443.

2. SAME—INSTRUCTIONS—HARMLESS ERROR—SPECIAL VERDICT.

Any error in the charge of the court, or in the refusal of requests to charge, which would permit the jury to find a township liable for a latent defect in a bridge, was rendered harmless by a special verdict that the defect was visible to persons traveling over the bridge, and was generally known in the township.

3. NEW TRIAL—DENIAL—EXCEPTION—ERROR.

Unless an exception is taken to the denial of a motion for a new trial, it will not be considered on error.

Error to Berrien; Carr, J. Submitted February 24, 1904. (Docket No. 105.) Decided June 25, 1904.

Case by Arthur L. Pearl against the township of Benton for personal injuries. From a judgment for plaintiff, defendant brings error. Affirmed.

*G. M. Valentine* and *M. L. Howell*, for appellant.

*James O'Hara* and *Gore & Harvey*, for appellee.

CARPENTER, J. On the 21st of December, 1895, plaintiff was injured by the fall of a bridge over which he was traveling in defendant township. He brought this suit to

recover compensation on the claim that defendant was responsible for his injuries. The first trial resulted in a judgment for plaintiff, which was reversed by this court. See 123 Mich. 411 (82 N. W. 226). The second trial resulted in a verdict and judgment for defendant. This also was reversed by this court. See 131 Mich. 275 (91 N. W. 209). On the third trial, plaintiff for the second time recovered a judgment. Defendant asks us to reverse that judgment.

1. It was the claim of the plaintiff on this trial that the cause of the fall of the bridge was the undermining of a mudsill which served as its foundation, and that this mudsill was being undermined for several months before the bridge fell; that visible evidence of this defect was presented to those passing over the bridge, by the settlement or canting of its north end; and that the defect was so obvious and generally known in the township that defendant's officials would, had they been diligent, have discovered and remedied it. Upon this theory the case was submitted to the jury, who rendered a verdict for plaintiff. We are asked to reverse this judgment, not upon the ground of the unsoundness of the theory upon which the case was submitted to the jury,—for this theory accords with our last decision in this case, and with *Thomas* v. *City of Flint*, 123 Mich. 10 (81 N. W. 936, 47 L. R. A. 499),—but upon the ground, as we understand from defendant's brief, that there was no such evidence that the defect was visible and generally known as to warrant the submission of the case to the jury. To this we cannot agree. There is certainly as much evidence, and, in our judgment, more, in the present record, than there was when the case was before us on the last occasion, and it was then said that there was "testimony tending to show that the imperfect condition of the bridge was visible and generally known for a long period." We do not mean to say that the undermining of the mudsill was visible. The canting and settlement at one end of the bridge was, however, clearly visible, according to plaintiff's testimony,

and generally known; and the evidence warrants the inference that due diligence on the part of those who should have observed this canting and settlement would, owing to the construction of the bridge and the conditions surrounding it, have led to the discovery that the mudsill was undermined and falling.

2. Defendant elected to maintain its highways and bridges, not by a system of general taxation, as provided by chapter 4 of our general highway act (Act No. 243 of the Public Acts of 1881; sections 4104–4114, 2 Comp. Laws), but by the labor of the inhabitants of districts, as provided in chapters 2 and 3 of said act. See sections 4072–4103, 2 Comp. Laws. It is contended that defendant was thereby relieved of its obligation to keep its highways and bridges in repair, and in a condition reasonably safe and fit for travel, as provided by Act No. 264 of the Public Acts of 1887 (sections 3441–3445, 1 Comp. Laws), because it had neither the means nor authority to comply with said act. It is contended that, under this law, the only means whereby a bridge could be repaired was the labor of the inhabitants, and that after November 1st, where, as in this case, the labor had all been performed, this means was not available. It is contended that there was no authority because the official charged by this law with the duty of maintaining highways and bridges is the overseer of highways for the district, who thereby becomes a State officer, for whose negligence the township is not responsible, and that there is no provision in this law by which any duty rests upon said overseer either to make these repairs, or to exercise any diligence to discover them, except at the regular time for supervising the labor of the inhabitants.

If this argument is sound and based on correct premises, the consequences are startling. It opens a method by which any township in the State may voluntarily relieve itself from or greatly lessen its statutory obligation. In the view we take of the case, it is unnecessary to pass upon the soundness of this argument, because, in our judg-

ment, it is founded on a false premise. If we look only at the provisions contained in chapters 2 and 3 of the act under consideration, there would be much force in the claim of defendant that townships adopting this method of maintaining their highways and bridges do not have adequate means of discharging their statutory obligation of keeping their bridges in good repair. But, in our judgment, any insufficiency of means or of authority in these chapters is supplied by other statutory provisions. We are unable to see why adequate means and authority to repair this bridge are not given to the defendant, and to all townships similarly situated, by sections 1, 2, and 3 of chapter 7 of the act heretofore referred to. See sections 4129–4131, 2 Comp. Laws. The first of these sections reads:

" The commissioner of highways shall have the care of the building, rebuilding, and repairing of all bridges within his township, and in cases where it shall be necessary for the public safety to build, rebuild, or repair any bridge within his township, where the cost in any case shall be over fifty dollars, he shall proceed, as soon as may be, to let by contract, pursuant to section three of chapter eleven of this act. * * * *Provided*, that nothing in this section shall prevent the overseers of highways of the several road districts in the State from expending any delinquent highway or commutation money or labor in the construction, repair, and maintenance of bridges in such districts."

Section 4130 provides for the payment for the labor performed, materials furnished, and other expenses incurred under the above section; and section 4131 provides for raising a fund where the expenditure in building bridges exceeds $1,000.

It is scarcely necessary to say that the authority given in these sections, extending, as it does, to "all bridges" in the township, applies where the township has adopted the method of maintaining highways and bridges by labor of its inhabitants. It results from these sections that the commissioner of highways, a township official, and not the overseer of the road district, is charged with the duty

of repairing bridges, and means are furnished him by which that duty may be performed. It is true that this duty cannot be immediately performed, under these sections, if the expenditure exceeds $50. But in such a case as that,—indeed, in many cases where the amount of the expenditure is less than that,—if the bridge is not safe for travel, the duty of closing it to travel can and should be performed. See *Southwell* v. *City of Detroit*, 74 Mich. 443 (42 N. W. 119). And this would be sufficient to prevent dangers to travelers, and, if performed in the case at bar, would have prevented plaintiff's injury.

It may also be said, in our judgment, that section 3 of the act creating municipal liability in cases of this character (see section 3443, 1 Comp. Laws) gave defendant adequate means and authority to repair this bridge. That section reads:

"It is hereby made the duty of townships * * * to keep in reasonable repair, so that they shall be reasonably safe and convenient for public travel, all public highways, streets, bridges, * * * and culverts that are within their jurisdiction and under their care and control, and which are open to public travel; and, when the means now provided by law are not sufficient, * * * such township * * * is hereby authorized to levy such additional sum * * * as will enable such township * * * to keep its public highways, streets, bridges, * * * and culverts in good repair at all times.

"Highway commissioners, street commissioners, and all other officers having special charge of highways, streets, bridges, * * * and culverts, and the care or repairing thereof, are hereby made and declared to be the officers of the township * * * wherein they are elected or appointed, and shall be subject to the general direction of such township * * * authorities in the discharge of their several duties."

It is contended that this section does not apply, because, in townships maintaining their highways by labor, the bridges are not under their care and control, because they are under the control of the overseer of the district. But, as we have already seen, the bridges in such townships are by section 4129 placed under "the care of the com-

missioner of highways." Even if it were otherwise, and they were under the care and control of the overseer of the district, that overseer is made by the second sentence in the section above quoted an officer of the township, and subject to the general direction of such township.

Defendant contends that "the provisions of this section (3443) are mere idle words, as applied to townships and highway officers, when highway taxes are collected in labor," because "any increase in the highway taxes of such township remains payable in labor, which may all be required by August 1st in each year." Neither section 3443, nor the act of which it is a part, indicates that the sum therein authorized to be levied is payable in labor, and defendant's contention furnishes the strongest kind of an argument that it is not so payable. If the assumption that it is so payable prevents, as defendant contends, a township keeping "its public highways, streets, bridges, and culverts in good repair at all times," then we are bound to assume, in order that the legislative purpose may be accomplished, that it is payable in money.

It is also urged that section 3443 does not aid because, no matter how much is raised under it, "it authorizes nothing, after the annual town meeting, for the then present year." By this we understand that it is claimed that the tax levied under this section in one year would not be available until after the tax was paid at the end of the year; that is, as applied to this case, the tax levied under this section in 1895 would not be available until 1896. It ·is to be borne in mind, however, that this section has been a part of the law since 1887. It authorizes a township to raise by tax sufficient money each year to answer all requirements until the tax of the following year is available. While it may be said that the defendant township could not, in the year 1895, raise the money, under this section, needed for the repairs in question, authority was given to raise that money in 1894.

It is to be observed that we are not dealing with the question of whether the defendant township properly exercised its statutory authority,—and, if it did not, defendant

alone is chargeable for its default,—but we are dealing with its contention that it lacked statutory authority to make the repairs in question; and it is our judgment, as heretofore stated, that section 3443, as well as the other sections referred to, answers that contention.

3. It is claimed that a request of the plaintiff, given by the court, warranted the jury in finding defendant liable for a latent defect, and it is also claimed that the court erred in not giving the following and other similar requests of defendant:

" If a large majority of the people of the township who passed over the bridge did not observe any defect in it, it cannot be said that the defect was so apparently visible as to give the township notice of its existence."

These alleged errors, if errors they were, are proved to be harmless by the fact that the jury, by their answers to special questions, found that the defect was visible to persons traveling over the bridge, and was generally known in the township prior to the accident.

Complaint is made of the refusal of the trial court to give other requests of defendant, and of the general charge. Many of these requests should not have been given. Such as should were covered by the general charge, which was fair to defendant, and a clear statement of the law applicable to the case.

4. Complaint is made because the court denied defendant's motion for a new trial. The record contains no exception to this denial, and therefore we cannot consider this complaint. See *Stevenson* v. *Railway Co.*, 118 Mich. 651 (77 N. W. 247).

We have examined the other errors relied on. We do not think they are well grounded, or that they demand discussion.

The judgment is affirmed.

MOORE, C. J., and MONTGOMERY, J., concurred. HOOKER, J., concurred in the result. GRANT, J., did not sit.