WHITFORD *v.* TOWNSHIP OF WASHINGTON.

1. MUNICIPAL CORPORATIONS—BRIDGES—TOWNSHIPS—NEGLIGENCE—HIGHWAYS AND STREETS.

The liability of a township for failure to maintain a bridge in proper repair pursuant to the requirements of Act No. 283, Pub. Acts 1909; 2 How. Stat. (2d Ed.) § 2463, depends upon notice to the township, either actual or imputed, that defects, in fact, existed in the bridge which were the ultimate cause of plaintiff's alleged injuries: it is not enough that the officers of the township might have discovered the defect or ought to have discovered it.

2. SAME—TRIAL—CHARGE.

In a negligence action against defendant township for injuries which were sustained by plaintiff because of a defect in the flooring of the bridge which plaintiff attempted to drive across, defendant was entitled to an instruction that, to charge the defendant township with constructive notice, plaintiff must establish by a preponderance of the evidence that the bridge was not reasonably safe and fit for travel on the date of the accident, and that its unsafe condition was such as to be obvious and to attract attention of persons passing over it; also that the township permitted the structure to remain in this condition for such an unreasonable length of time without repairing it, that it must be presumed notice of the defect had come to the officials.

3. SAME—TRIAL—CHARGE—REQUESTS.

The court also erred in modifying defendant's requests to charge in such a way as to permit the jury to find that the officers of the defendant township ought to have seen the alleged defect or should have discovered it in the exercise of their duty, where no evidence appeared in the record tending to prove that any officer saw the defect or was present when the same was clearly apparent or must have been seen.

Error to Gratiot; Searle, J. Submitted November 18, 1914. (Docket No. 112.) Decided March 17, 1915.

Case by Mary C. Whitford against the Township of Washington for personal injuries. Judgment for plaintiff. Defendant brings error. Reversed.

*Stone & Smith,* for appellant.

*Lyon & Moinet,* for appellee.

Ostrander, J. Testimony for the plaintiff tended to prove that while she was riding in a sleigh the foot of one of the horses went through a bridge in a highway in defendant township, the horse fell, and she, in consequence, fell or was thrown out of the sleigh, sustaining injury. In the trial of the action which she brought against the township, and in which she recovered, numerous exceptions were taken by defendant, many of which, with objections to the charge given, are urged here as ground for reversal of the judgment. Plaintiff's injury was received February 27, 1913.

An unusual difficulty attends upon any examination of the record, a difficulty to which the attention of counsel for appellant was directed at the hearing. In the record is found no index showing the page of the record where an exception may be found. Indeed, it does not appear by the printed record that a verdict was returned or judgment entered. Aside from this, and of more importance, because the court desires to learn and seeks the aid of counsel in determining the precise questions which are presented and opposing counsel are required to meet only such points as are urged here, the brief for appellant does not at all conform with the provisions of Supreme Court Rule 40. The statement of facts presented does not indicate that there was any issue of fact raised by testimony. The questions involved and the manner in which raised are not presented distinct from argument, nor at all except as they may be discovered, mainly by the process of deduction, from the argument.

There is one assignment of error (the twenty-first)
which is based upon the charge as given, which ap-
pears to have merit and which may properly be con-
sidered.  The portion of the charge referred to reads
as follows:

"In that respect I am requested to charge you by
defendant's counsel in their third request: 'To charge
the defendant township with constructive notice in
this case the plaintiff must show by a preponderance
of the evidence:  (*a*) That the bridge in question was
not reasonably safe and fit for public travel on the 27th
day of February, 1913.  (*b*) That its unsafe condi-
tion was of such a character as to be clearly obvious
and such as would attract and arrest the attention of
persons passing over it in the daytime, and that the
township permitted it to remain in such condition and
neglected for an unreasonable length of time to repair
it.'

"Now, gentlemen, I give you that charge, but with
some modifications.  I say to you that that is the rule
except to this extent: that the highway officials whose
duty it was to keep this bridge in reasonable repair
would be bound to take perhaps a little more notice
of it as they passed over it than the ordinary passer-by
would, and if they discovered at any reasonable time
before this accident happened that there was a con-
dition in this plank, a rotten condition, or a hole was
beginning to appear in it, which would lead an ordi-
narily prudent man to see that it might grow larger,
then it would be the duty of the township officials to
go further and make some inspection of the plank and
find out to what extent the rot had affected it and
take some steps then, if it was necessary, to repair it
before the hole in it did grow larger so that an acci-
dent would happen.

"I don't mean to imply by that charge that there
is any evidence that any officer did see it, because I
don't understand that there is, but I tell you this as
the law governing the case, so that if you find that it
had existed there long enough so that in the ordinary
course of events officials of the township going over
it did see it, or should have seen it, provided it was
obvious enough so that an official in going over it,
keeping in mind his duty to look after the bridges in

his township, should have seen and discovered it, then that would be such notice to the township as would require them to act and to cause the bridge to be repaired within a reasonable time thereafter."

Under the statute, actual or imputed knowledge or notice to the township of a defect in a highway or bridge is necessary to establish liability for injuries received on account of the defect. Act No. 283, Pub. Acts 1909. 2 How. Stat. (2d Ed.) § 2463. Assuming, as the trial judge did, that proof of actual knowledge, or of actual notice, was wanting, and that the question submitted to the jury was whether knowledge of the defect in question should be imputed to the defendant, it is a serious question whether the court correctly stated the governing rule. The rule itself is simple enough, and has many times been stated by trial courts and by this court. It is the phrasing of the statement, in applying the rule to the facts of a particular case, which has varied.

The testimony tended to prove that the defect complained about was a hole in a plank in the flooring of the bridge, and that it was caused by the exposure of the plank to the weather and to travel, by decay. The bridge spanned a drain or ditch, the span being about 10 feet and the width of the bridge 16 feet. It was a steel bridge floored with oak plank and had been built about 10 years. The highway was considerably traveled. Evidence of some decay of the plank appeared in the autumn of 1912, and was noticed by various travelers during a period of from four to six weeks before the plaintiff was hurt. Some of those using the highway saw it and some did not. It is described variously as an opening or decayed portion from 12 to 16 inches long and from 2 to 3 inches wide 3 feet or more from the end of the plank and in a part of the plank which came from the heart of the tree. Plaintiff's son, who with his wife was with plaintiff on the occasion of her injury and drove the team, drove

over the bridge three times a week, and had never noticed a hole in it. He described the hole, after the accident, as from 3 to 4 inches wide and from 1½ to 2 feet long—wider in some places than in others. It was not a defect which disturbed any traveler so much that, so far as appears, he notified any officer of the township thereof. Defendant produced the overseer of highways and the highway commissioner, but they were both dismissed, with questions indicating the offices held by them. It may be said that the testimony does not tend to prove that the defect was a glaring or obtrusive one, although in some stage it had been noticed by passers-by for two months and perhaps a longer time. The testimony tends to prove that the supervisor passed over it in January, 1913, but whether at that time the bridge was covered with snow or not is not clear. Otherwise the testimony does not tend to prove that any officer of the township passed that way while the hole was noticeably in existence. It does not appear that any other defect in the bridge existed, nor when repairs were last made, if the bridge had been repaired, nor when, if ever, it had been inspected. It is proper to read here the portion of the charge preceding that already set out, the two portions comprehending all that was said in the way of stating a rule by which to determine whether the township had notice:

"Now you will notice that I said to you that the township must have either notice or knowledge of the defect a reasonable time after that in which to repair it. Now I charge you as a matter of law that there is no evidence in this case that the township had actual notice or knowledge of the defect in this bridge; that is, no one has sworn that they went and told any highway officer that it was there, or that they saw any highway officer looking at or discovering it, but the plaintiff claims that she has shown such a state of facts here as charges the township of Washington with

notice of the condition there. That is what is sometimes called constructive or presumptive notice. And in that respect I charge you that it is for you to say whether or not this hole in the bridge was of such size and character and had existed for such length of time as would charge this township with knowledge of it; that is, charge its highway officers and officials whose duty it is to keep the highway in repair with knowledge of the fact that it is there.

"You have heard the evidence as to the length of time when the hole had existed, or existed to some extent; I don't mean to say that it existed the same size all this time, but the evidence has been given here as to when any one first discovered any hole in the plank or rotten place there, and what they discovered from that time on, and it is for you to say whether or not if people who passed over the bridge saw the hole there, whether or not the officials of the township did see it, or should have seen it during that time, or should have found it."

In the opinion of the majority of the court handed down in *Thomas* v. *City of Flint,* 123 Mich. 10 (81 N. W. 936, 47 L. R. A. 499), in February, 1900, appears an exhaustive review of cases to that time decided by this court, in connection with an interpretation and construction then put upon the controlling statute with respect to the notice which is a condition of liability. Of the law of 1887, which so far as the subject here involved is concerned is not different from the present law, it was said:

"It will be observed that this language implies that a municipality can only be held liable for injuries through defects of which it had notice or knowledge. As this was the substantial change made, we must conclude that mere neglect was not thereafter to be enough to create a liability, and that the new act required, not only proof of negligence in permitting the defect to exist, but also knowledge or notice of its existence, and an opportunity to remedy the defect after such notice or knowledge. The pointed language of the act forbids any other construction, and we should expect to find that thereafter proof of notice

or knowledge was held indispensable. We will examine subsequent cases."

In concluding the opinion it was said:

"From this review of the cases, it seems manifest that the plain provisions of the law of 1887 have been kept in view by the court, and that while some allusions to the case of *Township of Medina* v. *Perkins* may, at first blush, appear to have committed the court to a broader rule of liability than the language of the statute contemplated, an examination of the questions at issue and decided in the respective cases will show that this is not so. The law undoubtedly makes it the duty of municipalities to keep their streets, etc., in good repair, but it does not follow that there is a liability for a neglect of that duty. That duty has existed ever since Michigan has been a State, but, as already shown, there was no such liability for many years. Legislation was necessary to create it, and it follows that the liability extends no further than the statute requires. The act plainly limits liability to a case arising after knowledge or notice of the defect causing the injury, whether such defect exists by reason of the negligence of the municipality or not. There was doubtless abundant reason for such a proviso in the statute in the well-recognized facility with which injured persons shift the responsibility for accidents upon the public through the medium of charitably inclined juries. At all events, the law is plain, and we should not hold that a city or township is liable because it negligently omitted an inspection, when the legislative intention to limit recovery to cases arising from known defects is clear.

"We do not mean to be understood as saying that notice or knowledge may not be inferred from circumstances such as the existence of an obvious defect for a period which renders a want of knowledge improbable. It has often been said that the law will presume that the municipality has notice of defects which common observation for a long time has made notorious. This has been called 'constructive notice,' but it has often been said that the rule does not extend to latent defects, as I have shown. To say that a neglect to inspect is actionable is to nullify the statute."

See, also, *Pearl* v. *Township of Benton,* 123 Mich. 411 (82 N. W. 226) ; s. c., 136 Mich. 697 (100 N. W. 188) ; *Hunter* v. *Village of Ithaca,* 141 Mich. 539 (105 N. W. 9.)

Recurring to the charge, it will be perceived that the point at which the request of counsel for defendant was aimed was a rule according to which, and the facts found by them, the jury might · determine whether the defendant, within the meaning of the statute, had had notice of the defect. Whether defendant was or was not entitled to an instruction more favorable than the one requested, the court gave it, but with modifications which left no semblance of it remaining. The infirmity of the instruction given lies in this: That it implies that township officers when crossing bridges should observe what ordinary travelers would not. It introduced to the jury a condition of things which the testimony negatived. There was no occasion to point out the duty of an official who passed over the bridge and saw the defect, because it did not appear that any such official had observed the defect. Was it so obvious a defect, had it existed for so long a time, or was it so notorious, that notice of it may be presumed to have come to the authorities? This was the question to be answered by the jury. One or more of the things stated must have existed in order to charge the township with notice of the defect, in the absence of actual notice. In the portion of the charge last quoted, the last two ultimate facts stated, namely, whether the officers of the township "should have seen it," or "should have found it," were neither of them facts upon which, upon this record, the liability of the township could be predicated. Reading the whole of the charge upon this subject together, it nowhere limits the jury to the consideration of what may be properly considered in determining whether the defendant had constructive, or presumptive, notice of the defect. On the contrary, it is

calculated to lead to speculation and to wrong conclusions.

For this reason, the judgment must be reversed and a new trial granted.

BROOKE, C. J., and MCALVAY, KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred.