*In re* KEENE'S ESTATE.

MAYNARD *v.* KEENE.

1. WILLS—ESTATES OF DECEDENTS—EVIDENCE—DECLARATIONS OF
   DECEDENT.
      Where decedent, in her will, cut off her husband, against
      whom she had filed a bill for divorce, with a gift of $10,
      giving as a reason, "because he robbed me of money from
      time to time until I fired him out of the house, and I re-
      fused to live with him," the instrument having been lost,
      mislaid or destroyed, testimony tending to show the al-
      leged state of bad feeling between testatrix and her hus-
      band was properly admitted to assist the jury in determin-
      ing the issue, which was whether or not the will had been
      revoked.[1]

2. SAME—SUBSCRIBING WITNESS—EFFECT OF BEQUEST TO WITNESS.
      Where decedent in drafting her will placed certain property
      in trust for two minor children of her brother, the effect
      of having the trustee appear as a subscribing witness did
      not necessarily bear on the issue whether or not the will
      had been executed and later revoked; nor was the validity
      of the bequest a question to be submitted to the jury.

[1]On evidence to establish lost or destroyed will, see note in 38
L. R. A. 433.

      189 Mich.—7.

3. SAME—REVOCATION—DESTRUCTION OR LOSS OF INSTRUMENT.

If it is shown that after a proper search the will of a testatrix cannot be found and it cannot be traced out of the possession of deceased, the presumption of revocation may be aided by evidence of declarations made by the testatrix. The question becomes an issue of fact for the jury.

4. SAME.

Where there was evidence in the record to prove the testatrix had frequently stated to her relatives, prior to her last illness, that she had so arranged her affairs as that her brother's children should receive the bulk of her property, and there was evidence tending to show her antipathy toward her husband, the trial court was justified in submitting to the jury the testimony which had some tendency to disprove revocation as alleged by contestant.

5. APPEAL AND ERROR—NEW TRIAL—EXCEPTIONS—SAVING QUESTIONS FOR REVIEW—RECORD—BILL OF EXCEPTIONS.

The bill of exceptions in a proceeding to review, in the Supreme Court, by writ of error, the denial of a motion for a new trial, under 3 Comp. Laws, § 10504, should contain all proceedings upon such motion, including the reasons given by the trial court and exceptions taken to the refusal, and failure to do so precluded the review of the finding of the court, although counsel incorporated such exceptions in the printed record.

Error to Muskegon; Sullivan, J. Submitted October 15, 1915. (Docket No. 113.) Decided December 21, 1915.

Frank Maynard presented for probate the alleged will of Alice Maynard Keene, deceased, and Gust Keene, contestant, appealed to the circuit court. Judgment for proponent and contestant brings error. Affirmed.

*Sutherland, Johnson & Sessions,* for appellant.
*Dunham & Dunham,* for appellee.

KUHN, J. The decedent, Alice Maynard Keene, at the time of her death had been a resident of the city of

Muskegon for approximately 20 years. During that time she had accumulated considerable real estate, and had been proprietress of several houses of questionable reputation in that city. She had a brother, Frank Maynard, who was married and had three children. She had known the contestant, Gust Keene, her husband, for many years before he came to Muskegon in 1907, and married him in Chicago in 1911. She lived with him until May, 1912, when they separated. In July she filed a bill for divorce against him in the circuit court for the county of Muskegon, which was dismissed in April, 1913, by the trial court after hearing the testimony. In November, 1913, she commenced another suit in the circuit court in the county of Kent against him for divorce, which apparently was pending at the time of her death.

In the year 1900 she had a will prepared, by the terms of which her property went to her brother, with certian provisos, and in the fall of 1912 she went to the office of Mr. John H. Banninga, who is the manager of a real estate company in the city of Muskegon, and asked him to prepare a will for her. Mr. Banninga, who had advised her for several years concerning some of her business matters, met her by appointment, and after she produced her old will he took a blank form of will and made a lead pencil memorandum or copy of what she wanted. On the next evening a pen and ink copy was made, and that evening the decedent again came to his office, where the will was read over to her, and while waiting for a person who had been asked to be a witness of the will, she also read it over. Subsequently a Mr. Matthew H. Steiner was called in and, together with Mr. Banninga, witnessed the will, which was signed and executed that evening. The will was then put in an envelope and sealed and locked in a box in a vault of the Wood Real Estate Company, and the old will was at that time de-

stroyed and put in the stove by the decedent. It appears from the testimony that during these two visits to Mr. Banninga's office she stated that she wanted the property to go to her brother's children, as her brother, Frank Maynard, was the victim of a drug habit, and that her husband had robbed and abused her, and that she had been compelled to file a bill for divorce against him.

In November, 1913, she again went to the office of Mr. Banninga and told him that she was going to Waterloo, Iowa, where her brother, Frank Maynard, was living; that she wanted to take the will with her in order to show them how she had disposed of her property, and reiterated her hatred toward her husband. While in Waterloo she read the will over to Mrs. Maynard, who saw it, and whom she told that the children would get practically all the property, and that she wished the children to be sent to a convent. Mrs. Maynard also testified that the decedent was apparently not on friendly terms with Mr. Keene, as she did not speak kindly of him at all, but used profanity when talking about him. The decedent arrived in Waterloo about three weeks before Thanksgiving, and on the Saturday before Thanksgiving she left Waterloo for Chicago, intending to go from Chicago to Grand Rapids. After arriving in Chicago she wrote her brother from a hotel and requested him to send the baggage check for her trunk, which had not left on the same train that she had. This was the last heard of her by her family until a few days later, when Frank Maynard received a telegram from Grand Rapids that she was dead. She died in the home of Mrs. Mamie Burress, where she spent about eight days, and was sick practically all the time she was there. After her death no will was found, and upon petition of Frank Maynard a special administrator was appointed in December, 1913. In June, 1914, Mr. Banninga discovered the

old pencil copy of the will, which he had made, in his desk, and a petition was then filed in the probate court for the county of Muskegon to establish this lost will. It was duly certified to the circuit court, where it was brought on trial, and the will established by the verdict of the jury, and judgment entered thereon.

The first group of assignments of error relate to testimony which was received over objection, admitted for the purpose of showing the alleged enmity that Mrs. Keene had in her lifetime toward her husband, the contestant. The will contained the following bequest:

"I give, devise, and bequeath to my husband, Gust Keene, the sum of ten ($10.00) dollars, or the sum of one hundred ($100.00) dollars [the $100 is then scratched out, and ten written above it], and no more, because he robbed me of money from time to time, until I fired him out of the house, and I refused to live with him."

It is practically undisputed in this case that the will in question was made, and the real question in dispute was whether or not it had ever been revoked. We think that the testimony here objected to was competent as bearing upon the question of the revocation of the will.

The bulk of the property, by the terms of the will, was bequeathed to the children of Frank and Nellie Maynard, to be·held in trust by the executor named in the will until said children reached the age of 21 years, if the executor deemed best. John H. Banninga was named as executor, and also was one of the subscribing witnesses thereto.

The trial court denied a request to charge the jury that the bequest in trust to John H. Banninga for the children of Frank and Nellie Maynard was void because he is one of the two subscribing witnesses to the will, and instructed the jury as follows:

"In relation to John H. Banninga having been mentioned in the will, or the copy that is said here, as the executor or as trustee, as far as that is concerned, that does not make any difference, excepting, perhaps, the weight to be given to his testimony. If he actually subscribed the will, and Steiner subscribed the will, and Mrs. Maynard subscribed the will, what effect that may have upon the will is not for the jury."

Reliance is placed by counsel for the appellant upon section 9268, 3 Comp. Laws (4 How. Stat. [2d Ed.] § 10981), which provides:

"All beneficial devises, legacies and gifts whatsoever, made or given in any will to a subscribing witness thereto, shall be wholly void, unless there be two other competent subscribing witnesses to the same; but a mere charge on the lands of the devisor for the payment of debts, shall not prevent his creditors from being competent witnesses to his will."

We do not think it is necessary at this time to determine whether the vesting of this property in Mr. Banninga as trustee for such a period is such a beneficial interest given by the will as to bring it within the prohibition of the statute above quoted. The questions here for the jury to determine were whether or not such a will had been legally executed, and whether it had been revoked. We agree with the instructions of the trial judge that the question of the validity of this bequest was not a proper matter for the jury to consider in the case before them.

It is the claim of the appellant that a verdict should have been directed for the contestant after the proponents had rested their case, and that no competent testimony was introduced to outweigh the presumption of revocation which arose because of the failure to discover the will. It is without question the rule of law that, where a will cannot be found at the death of the testator upon proper search being made, and especially where the will is not traced out of the possession of

the testator, it is to be presumed that it was destroyed by him *animo revocanda*. But it is also established in this State that this presumption of revocation can be met by declarations of the testator. It was said in *Ewing* v. *McIntyre*, 141 Mich. 506, 517 (104 N. W. 791):

"But counsel for contestants contend that the declarations of the testator were not competent evidence to rebut the presumption of revocation, and that the great weight of current authority is to that effect [citing numerous cases].

"We do not deem it necessary to enter upon a discussion of the authorities to determine on which side the weight of authority lies, since the rule has been established in this State against contestants' contention. *Lawyer* v. *Smith*, 8 Mich. 412 [77 Am. Dec. 460]; *Harring* v. *Allen*, 25 Mich. 505; *In re Hope*, 48 Mich. 518 [12 N. W. 682]; *In re Lambie's Estate*, 97 Mich. 50 [56 N. W. 223]; *Cheever* v. *North*, 106 Mich. 390 [64 N. W. 455], 37 L. R. A. 561 [58 Am. St. Rep. 499]."

It was also said in *Re Foerster's Estate*, 177 Mich. 574, on page 585 (143 N. W. 616, on page 620):

"Whether or not the presumption of revocation is rebutted is a question for the jury. Thornton on Lost Wills, § 73, citing cases."

There is evidence in this record to show that from the time that the testatrix executed the will until she lay upon her deathbed, she told her friends and relatives that she had had her affairs so arranged that her brother's children would get the bulk of her property. Mrs. Burress, at whose house she died, testified:

"She said she had things fixed in case anything happened to her, and that it would go to her brother's children, and she spoke especially of Olgy, the oldest one. She seemed to be more in favor of him.

"*Q.* But she said that it would go to her brother's children?

"*A.* Yes; her brother's children. She did not speak anything about him or about his wife to me.

"*Q.* I will ask you whether or not she said that to you the day she died?

"*A.* Yes; she did.

"*Q.* And whether or not she said that to you several times before that.

"*A.* Several times; there was not a day that she did not talk about it."

Considering also her repeated statements concerning her husband, the contestant, which showed a feeling of antipathy on her part toward him, the fact that at the time of her death divorce proceedings were pending, we are of the opinion that the testimony raised a question of fact which we think the trial judge was clearly justified in submitting to the jury.

The counsel for contestant made two motions for a new trial; the second motion being accompanied by various affidavits and supplemental affidavits. Both these motions were denied by the trial judge, and the denials of these motions are assigned as error by proper assignments. Neither the motions for a new trial, nor the orders denying the new trial, nor the affidavits in support of the second motion for a new trial, nor the exceptions to the findings of the court denying a new trial are made a part of the bill of exceptions, but are found in the printed record. The only reference thereto in the bill of exceptions certified to by the trial judge is his statement giving the reasons for the denial of the second motion for a new trial. Counsel for appellee contend that under the decisions of this court the exceptions to the denial of the motion for a new trial, not being in the bill of exceptions as certified to by the trial judge, are not properly a part of the record, and should not now be considered, and attention is called to the statute (section 10504, 3 Comp. Laws) which reads as follows:

"SECTION 1. *The people of the State of Michigan enact,* That in all cases hereafter taken to the Supreme Court on writ of error or appeal, where a motion for a

new trial has been previously refused by the trial judge, the party appealing the same may incorporate in the bill of exceptions a record of all proceedings had on said motion for a new trial, including the reasons given by the trial judge in refusing to grant said new trial. Exceptions may be taken and error assigned on the decision of the circuit judge in refusing such motion, and the same shall be reviewed by the Supreme Court."

Stevens, in his work on Michigan Practice, says with reference to the preparation of the bill of exceptions (Vol. 2), on page 476:

"The denial of a motion for new trial may, since the statute of 1893, be set forth in a bill of exceptions, for review by the Supreme Court. In such case 'a record of all proceedings had on said motion for a new trial, including the reasons given by the trial judge in refusing to grant said new trial,' may be incorporated. The bill of exceptions should contain: (1) The motion and the affidavits filed in support of and against it; (2) the order denying the motion and the reasons given by the trial judge for its denial; (3) the exceptions taken by appellant to the denial. While all these documents are a part of the records and files of the cause, the statute seems to contemplate that they shall be incorporated in the bill of exceptions."

See, also, 2 Green's Michigan Practice (3d Ed.), p. 1145.

We are of the opinion that the author has come to the right conclusion in saying that it is apparent from a reading of the statute that the exceptions to the denial of a motion for a new trial and all proceedings with reference thereto should be incorporated in the bill of exceptions. Counsel urge that, because these various papers are printed in the printed record here filed, that is sufficient, because in various decisions of this court the word "record" is used indiscriminately with the words "bill of exceptions" in holding that the reasons for denying a motion for a new trial must be in the record. However, it must be clear that, when

the word "record" was used in these decisions, it could only be said to refer to such documents and proceedings as are properly a part of the record for review in this court, and not to what counsel may see fit to have printed in the printed record. Here, clearly, an attempt was made to assign error upon exceptions which are not in the bill of exceptions certified to by the trial judge, and we therefore must refuse to consider assignments of error based thereon.

This court said, in *Stevenson* v. *Railway Co.,* 118 Mich. 651, 653 (77 N. W. 247):

"Under Act No. 134, Pub. Acts 1893, providing that there may be incorporated in the bill of exceptions a record of the proceedings on motion for a new trial, including the reasons for the refusal thereof, and that exceptions may be taken and error assigned thereon, the action of the court cannot be reviewed in the absence from the bill of the reasons therefor and exceptions to the decision. *McRae* v. *Garth Lumber Co.,* 102 Mich. 488 [60 N. W. 967]."

See, also, *Pearl* v. *Township of Benton,* 136 Mich. 697 (100 N. W. 188); *Wilbur* v. *Railroad Co.,* 145 Mich. 344, 351 (108 N. W. 713); *In re Meeker's Estate,* 169 Mich. 303, 306 (135 N. W. 248).

Finding no error in the assignments of error properly before us for consideration, we are constrained to affirm the judgment.

BROOKE, C. J., and PERSON, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.