October 15, 1946, Daisymae Bradley filed a petition for probate of a last will in the probate court of Wayne county. A contest over the allowance of the will having arisen, the probate court, pursuant to the provisions of Act No. 288, chap. 1, § 36, Pub. Acts 1939, as amended by Acts Nos. 26, 176, Pub. Acts 1941 (Comp. Laws Supp. 1945, § 16289-1 [36], Stat. Ann. 1943 Rev. § 27.3178 [36]), certified such contest to the circuit court where it was tried before the court without a jury. Judgment was rendered in favor of proponent. *Page 103 
It appears that Ethel Taylor died on October 8, 1946, in the city of Lakeland, Florida; that at the time of her death she was possessed of real estate in Wayne county, Michigan, of the approximate value of $15,000; and that on September 17, 1941, she executed a will, which she deposited for safekeeping in the probate court of Wayne county, and a copy which was left at the office of the attorney who drafted the will. It also appears that Mr. Olds, who drafted the will, gave Mrs. Taylor a receipt for payment of the fee for drafting the will. In 1938, Mrs. Taylor went to Florida where her son and daughter-in-law were living, but returned to Detroit every summer to see her niece, Daisymae Bradley. In 1942, Mrs. Taylor withdrew the will from the probate court of Wayne county and took it with her to Florida where she was living with her son and daughter-in-law. Mrs. Taylor was in Detroit during the summer of 1946. She left Detroit about September 1 and returned to Florida where she died October 8, 1946.
After her death, her son, Rowland, looked after the funeral arrangements and in searching among his mother's possessions found a metal box which he later opened and found a certificate to a cemetery lot and six $1,000 war bonds, five of which were made payable to Ethel Taylor and Daisymae Bradley, or Daisymae Bradley alone, and one of which was made payable to Ethel Taylor or Rowland C. Taylor. It also appears that Rowland Taylor took many of Mrs. Taylor's personal belongings to an incinerator where his uncle, George Quay, burned them.
The cause came on for trial and during the course of the trial the proponent of the will introduced testimony to the effect that at the time of taking the will to Florida, Mrs. Taylor informed Daisymae Bradley of such removal and gave her a sealed envelope, telling her that it contained something that would be of *Page 104 
value to her after testatrix was gone and would show that she had made a will. This envelope, when opened after Mrs. Taylor's death, contained the receipt Mr. Olds had given Mrs. Taylor for drafting the will.
Mrs. Florence B. Crews testified:
"Prior to 1941 Ethel Taylor used to always say that she didn't want to see Daisy work so hard. She told me between 1941 and 1946, the date of her death, that she had taken care of Daisy and she was going to see to it that she had the house, so that when she was gone Daisy would be taken care of; she wouldn't have to work so hard in her old age; that was her idea."
Christine Pitt testified:
"I was acquainted with her aunt, Ethel Taylor. I have known of her for a great many years, ever since I had known Daisy, but had not known her personally very long. I had seen her at Daisy's house. We met outside the house and spent an evening together and had dinner together; that was the last time she was here; that was in the summer, the late summer of 1946. There was a great deal of conversation which was not directed at me. The aunt said that she had acted as a mother to Daisy since her mother, her own mother's death, which occurred shortly after Daisy's birth. She talked about her son and said she had taken good care of him during her lifetime and that she had taken care of Daisy; that she wanted Daisy to have the house, one of the houses, and the contract on the other house. She mentioned the bonds, and also mentioned Daisy's painting and her book. I didn't even know about Daisy's having written a book. She said she was going to finance Daisy on the publication of the book, that she wanted her to go on with her painting. This conversation took place very early in September of 1946. During that conversation she used the word `will.' She said she had taken the will to Florida and she also mentioned the reason why. She said that Daisy understood *Page 105 
the reason why, but I didn't — it wasn't mentioned in my presence."
Proponent introduced a letter written by Ethel Taylor to Daisymae Bradley under date of May 20, 1946, in which she stated among other matters, "I have the will."
The contestant introduced evidence for the purpose of showing that the testatrix destroyed the will. Rowland C. Taylor testified that about the middle of September, 1946, after Mrs. Taylor returned to Florida and approximately three weeks before her death, while he and his mother were in a car she stated:
"`You know when I die you will be pretty well off.' And I said `What do you mean Ma;' and she said `You will have, you know, what I have,' and she said `those two houses in Detroit are paid for. There isn't every boy can have that left to him.'"
Edward Quay, who is a brother of deceased and 80 years of age, testified that for the past seven years he has been spending his winters in Florida; and that during the month of September, 1946, he had a conversation with testatrix in which she said:
"`Now, I have got $5,000 in bonds for Daisy, for Daisy, so in case when she gets old and cannot hold a job she will have something to fall back on.' Now she says `You know' she says `I made a will.' `Now,' she says, `You know' she says `I made a will. I willed Daisy the bungalow' and she says `when I consider what I have done' she says `my what would my son think of me if he knew that.' She says `I withdrew the will and destroyed it.' That was the end of that conversation."
In rebuttal, proponent offered the testimony of George Quay, also a brother of testatrix and 84 1/2 years of age, who testified: *Page 106 
"I never heard Ed at any time make any statement that my sister Ethel had destroyed a will. I never heard that statement until I got here. I never knew anything about a will; never heard about it. I never heard about a will until I was asked to come here.
"About two weeks before she died she said she wanted to build a house in St. Petersburg, and have Daisy come and live with her. She says `I would like to.' `Well' I says, `why don't you do it' I says, `Why don't you sell the house in Detroit' I says, `and build a little house maybe closer together.' So she says `I can't do that' she says. `I gave Daisy the little house' she says, `and Daisy won't quit her job' she says. `I wanted to give Daisy something because she can only work a year or two more on account of her age, `cuz they wouldn't have a girl over a certain age in an office,' and she says `I wanted to help her and have a place for her.'"
The trial court entered an order allowing the instrument to stand as the last will and testament of Ethel Taylor. In an opinion filed in the cause the court stated:
"Reviewing the record in this case in its entirety and having listened considerately and intently to the testimony given on the stand by all witnesses, it is my determination and finding that the proponent has made out a case by a preponderance of the evidence and the instrument she presents as and for the last will and testament of Ethel Taylor not only is such will but that it is entitled to admission to probate, and it is so ordered."
Contestant appeals and urges that the trial court was in error in allowing the copy of the will to stand as the last will and testament. The trial court in coming to his decision in the cause evidenced a disbelief in the testimony of Edward Quay.
It appears that Edward Quay testified to a conversation with his sister about the middle of September, *Page 107 
1946, the substance of which was that his sister informed him that she had destroyed the will, yet this same witness eight days after the death of testatrix wrote Daisymae Bradley as follows:
"Dear Daisy:
"I had a laugh last night when you said you thought I was a friend of yours. Well, I am. I only told you what Ethel told me about the house. If Duke should die she would like to see you get everything, but of course, that is past. Ethel did not expect to die. She did not want to die. She also told me if Crews lose 140 Edison, she was going to let you move in the bungalow. She hated to put that woman out. She has been there so long and is such a good tenant. Now, if that will is on file and she has not cancelled and if you can cinch it, go to it, you have our best wishes, Ed."
The above letter does not harmonize with the testimony given by the witness. We cannot disagree with the trial court in giving little, if any, credence to such testimony.
In the case at bar it is admitted that Ethel Taylor executed a will. The only question is whether she destroyed it with the intention of revoking it. Contestant asserts that the last will and testament of deceased having last been in her possession and not having been found after diligent search, a presumption arises that she destroyed it with the intention of revoking it. Contestant also urges that he produced evidence to affirmatively show that the will was destroyed with the intention of revoking it.
It is the rule in this State that where a will cannot be found at the death of the testator upon proper search being made, and especially where the will is not traced out of the possession of the testator, it is to be presumed that it was destroyed by himanimo revocando, see In re Keene's Estate, 189 Mich. 97 (Ann. Cas. 1918E, 367). But it is also established in *Page 108 
this State that this presumption of revocation can be met by declarations of the testator, see Ewing v. McIntyre,141 Mich. 506, and whether or not the presumption is rebutted presents a question of fact, see In re Foerster's Estate,177 Mich. 574.
In the case at bar the trial judge saw and heard the witnesses. It is his province to draw legitimate inferences from established facts. We think there is a sound basis for the conclusions he has arrived at. The evidence does not preponderate against his findings of fact.
The judgment is affirmed, with costs to proponent.
BUSHNELL, C.J., and BOYLES, REID, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.